In re the Marriage of Catherine A. **PFLEIDERER**, petitioner, **Appellant**,

v.

Ronald **PFLEIDERER**, Respondent.

No. C4-98-1817.

Court of Appeals of Minnesota.

April 20, 1999.

Michael D. Schwartz, Jodi J. Langhorst, Michael D. Schwartz, P.A., Minneapolis, MN (for appellant)

Steven B. Schmidt, Gregory P. Wilken, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, MN (for respondent)

Considered and decided by TOUSSAINT, Chief Judge, LANSING, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, * Judge.

Catherine Pfleiderer appeals from the judgment and decree dissolving her marriage to respondent Ronald Pfleiderer and from various orders issued by the district court during these dissolution proceedings. She challenges the district court's determination that certain property located in Lutsen, Minnesota, was marital, the court's decision enforcing a May 11, 1998 settlement agree-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ment, and the court's award of attorney fees to respondent. We affirm.

## FACTS

On August 19, 1997, appellant filed a petition for dissolution of marriage. The parties had been married for 57 years and were both 82 years old at the time.

During the marriage the parties accumulated substantial assets, including a cabin and lake front property in Lutsen, Minnesota. The parties purchased the property in 1970 for $30,000; the property is now valued at more than $400,000. The parties also have other assets not at issue in this appeal.

In 1982, while preparing an estate plan, the parties' lawyer advised them that in the event appellant predeceased respondent, only assets held in appellant's name would qualify for a unified credit and avoid being subject to estate taxes at her death. The lawyer recommended that the parties prepare wills creating a trust and providing that the assets of the first deceased spouse be transferred into trust for the lifetime use of the surviving spouse. Upon the death of the second spouse, the trust assets and the assets held by the second spouse would be distributed to the parties' children with substantial tax savings.

To implement the estate plan, the parties severed their joint tenancy in the Lutsen property and placed the title in appellant's name only. On January 14, 1983, the parties conveyed title to the property to an unmarried attorney at their lawyer's law firm, who immediately conveyed the property back to appellant.

During the 1997 divorce proceedings, appellant alleged that the Lutsen property was her nonmarital property because it was conveyed to her alone by a third person. The district court determined that the Lutsen property was marital and that the "straw person" conveyance did not convert the marital property into nonmarital property.

On May 11, 1998, the court held a pretrial conference. Both parties were advised in advance that they were required to attend the conference. Appellant failed to appear, but her attorney appeared on her behalf. During the conference, appellant's attorney telephoned her twice. After the second phone call, both counsel represented to the court that an agreement had been reached, which called for a 50 percent division of all marital assets, including both the Lutsen and St. Croix properties, which were to be sold. Because of appellant's advanced age and deteriorating medical condition, the court did not require appellant's presence, but determined that she would be bound by the representations of her attorney. The court instructed the parties to submit a signed marital termination agreement and judgment and decree by May 27.

On May 13, respondent's counsel submitted a draft to appellant's counsel. A few days later, appellant changed her mind and told her attorney that she did not want the Lutsen and St. Croix properties sold. Instead, appellant now wanted to retain ownership of the properties so that she could give them to the couple's children. Because respondent had no objection to appellant keeping the properties if he received an equivalent award from the rest of the couple's assets, another termination agreement was prepared that allowed appellant to retain both properties. The parties were to sign the modified agreement on June 3.

On May 29, appellant retained a new attorney. On June 15, respondent brought a motion to enforce the settlement reached at the pretrial conference. Although the court notified counsel that the parties should attend the hearing on the motion to enforce, appellant again failed to appear.

Following the hearing, the court ruled that the parties had reached an agreement on May 11. The court then stated that it would sign the proposed findings within one week unless it was presented with a modified settlement. It also held that respondent was entitled to the attorney fees incurred in accommodating appellant's proposed modifications to the agreement and those resulting from the necessity of bringing the motion to enforce the agreement.

This appeal followed entry of the judgment and decree incorporating the May 11 settlement agreement.

## ISSUES

I. Should those portions of the parties' briefs that refer to depositions not in evidence be stricken?

II. Did the district court err in determining that the Lutsen property remained marital property even though it was transferred into appellant's name through a "straw person" conveyance as a part of the parties' estate plan?

III. Did the district court err by enforcing the settlement agreement?

IV. Did the district court err by awarding respondent attorney fees?

## ANALYSIS

### I.

On appeal, respondent has moved to strike portions of appellant's brief, specifically those portions that refer to depositions not filed with the district court. The "papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases." Minn. R. Civ.App. P. 110.01. Portions of certain depositions, including those of Larry Johnson and Michael Bramen, were attached as exhibits to various filings and are properly part of the record. Other depositions, however, have not been filed with the district court and are not part of the record. We strike those portions of both parties' briefs that rely on evidence that is not part of the record, and the portions of the appendices to those briefs containing material outside the record.

### II.

The district court granted summary judgment to respondent, determining that the Lutsen property was a marital asset. Summary judgment is appropriate only when the

> pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Minn. R. Civ. P. 56.03. The evidence is viewed in a light most favorable to the non-

moving party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

Regardless of the form of ownership, property obtained by either spouse during the marriage is presumed to be marital property. Minn.Stat. § 518.54, subd 5 (1998). A party seeking to overcome that presumption must demonstrate by a preponderance of the evidence that the property is nonmarital. *Olsen v. Olsen*, 562 N.W.2d 797, 800 (Minn.1997). Nonmarital property includes property acquired by a spouse during the marriage by "gift, bequest, devise or inheritance made by a third party to one but not to the other spouse[.]" Minn.Stat. § 518.54, subd. 5(a). Whether property is marital or nonmarital is a question of law, but a reviewing court must defer to the trial court's underlying findings of fact. *Olsen*, 562 N.W.2d at 800.

Appellant argues that because the Lutsen property was given to her by a third party, it is her nonmarital property under Minn.Stat. § 518.54, subd. 5(a). We disagree.

Although the property was conveyed to appellant by a third party, that third party was the parties' lawyer acting as a "straw person." A "straw person" is defined as "one who acts as an agent for another for the purpose of taking title to real property and executing whatever documents and instruments the principal may direct respecting the property." *Black's Law Dictionary* 1421 (6th ed.1990). Here, the parties' estate planning lawyer asked another member of his firm to act as the parties' agent in a transaction designed to sever the parties' joint tenancy and place the property in appellant's name to facilitate the parties' estate plan. The lawyer, acting as the "straw person," did not otherwise have an interest in the property and was acting merely as a conduit through which the parties were able to accomplish their plan.

The mere act of "'transferring title from individual ownership to joint tenancy does not transform non-marital property into marital property.'" *McCulloch v. McCulloch*, 435 N.W.2d 564, 568 (Minn.App.1989) (quoting *Montgomery v. Montgomery*, 358 N.W.2d 169, 172 (Minn.App.1984)). We be-

lieve it is equally clear that transferring joint property into one party's name for estate planning purposes does not convert marital property into nonmarital property.[1]

## III.

■ Appellant argues that the district court erred by granting respondent's motion to enforce the May 11 settlement agreement. She claims that her former attorney was not authorized to settle her claims. Whether an attorney had the authority to settle a claim on behalf of his client is a question of fact, and as such, the district court's decision on the issue will be upheld unless clearly erroneous. *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49, 52 (Minn.App.1992).

■ The district court found that appellant had in fact authorized the settlement agreement during a phone conversation with her former attorney and that she had second thoughts afterwards. There is no evidence in the record to contradict the district court's finding. The letter appellant sent to her former attorney stating that she would not agree to anything until she had a chance to review the documents was dated four days after she had already agreed to the terms of the agreement at the pretrial conference. Given these undisputed facts, the district court's finding that appellant had in fact agreed to the terms of the May 11 agreement is adequately supported by the record and is not clearly erroneous. Thus, the question becomes whether appellant has alleged sufficient grounds to attack the judgment.

■ When a judgment and decree is entered based on a stipulation, the stipulation is merged into the judgment and cannot thereafter be attacked by a party seeking relief from the judgment and decree. *Shirk v. Shirk*, 561 N.W.2d 519, 522 (Minn.1997). "The sole relief from the judgment and decree lies in meeting the requirements of Minn.Stat. § 518.145, subd. 2." *Id.* (footnote omitted). That provision allows for reopening a judgment and decree for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect:

(2) newly discovered evidence * * *;

(3) fraud * * * or other misconduct of an adverse party;

(4) the judgment and decree or order is void; or

(5) the judgment has been satisfied, released, or discharged, or a prior judgment and decree or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment and decree or order should have prospective application.

Minn.Stat. § 518.145, subd. 2 (1998). Appellant has not alleged, and the record fails to support, the existence of any of these factors.

■ In affirming the district court's decision to enforce the agreement, we note that the district court sits as a third party in dissolution proceedings and stands in place of and on behalf of the citizens of the state. *Karon v. Karon*, 435 N.W.2d 501, 503 (Minn. 1989). The district court made detailed findings and determined that on these unusual facts it would enforce the parties' stipulation. The stipulation provided for an equal division of assets, which is a presumptively fair property division in a long-term marriage such as in this instance. *See Miller v. Miller*, 352 N.W.2d 738, 742 (Minn.1984) (equal division of assets accumulated through joint efforts appropriate for long-term marriage).

## IV.

■ "On review, this court will not reverse a trial court's award or denial of attorney fees absent an abuse of discretion." *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn.1987).

The district court awarded respondent attorney fees for the costs he incurred to accommodate appellant's proposed modifications to the parties' agreement and to file a motion to enforce the agreements. The court, however, awarded those fees pursuant to Minn.Stat. § 549.21 (1996), which had been superceded by Minn.Stat. § 549.211 (1998)

---

1. We note that appellant argues in her brief that respondent intended to give her the property as a gift. Even if that were true, the property would be marital. *See* Minn.Stat. § 518.54, subd 5(a) (gift "made by a third party" to one spouse but not to the other is nonmarital).

and was no longer in effect at the time of the award. *See* 1997 Minn. Laws ch. 213, art. 2, § 6 (repealing Minn.Stat. § 549.21); 1997 Minn. Laws ch. 213, art. 1 (enacting Minn. Stat. § 549.211). Although the reasons for awarding attorney fees are similar, the procedure has changed. Sanctions cannot be awarded against a party under Minn.Stat. § 549.211 unless that party is given an opportunity to withdraw or correct the challenged paper or claim. Minn.Stat. § 549.211, subd. 4(a), (b).

In this case, appellant failed to appear at the pretrial conference, even after being ordered by the court to attend. Appellant also failed to attend the hearing on respondent's motion to enforce the parties' agreement, even though the court contacted her attorney and again told him to have appellant there. Had appellant attended the pretrial conference, respondent's motion to enforce might not have been necessary. Appellant had ample notice and opportunity to withdraw her baseless claims. Under these circumstances, the district court did not abuse its discretion in awarding respondent attorney fees under Minn.Stat. § 549.211.

Finally, because we believe the arguments raised by appellant on appeal are not entirely frivolous, we deny respondent's motion for attorney fees on appeal.

### DECISION

The district court did not err in determining that the Lutsen property was marital, in enforcing the agreement reached at the pretrial conference, or in awarding attorney fees to respondent.

**Affirmed; motion granted.**